# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WILLIAM CRAFTON and
MEREDITH BENSON,

      Plaintiffs,

v.                                                   Case No. 12-CV-602

LAW FIRM OF JONATHAN B. LEVINE,

      Defendant.

## DECISION AND ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this action, plaintiffs William Crafton and Meredith Benson ("the plaintiffs") filed a complaint against the Law Firm of Jonathan B. Levine ("the law firm" or "the defendant") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"). On May 1, 2013, the defendant filed a motion for summary judgment (Docket # 22); the plaintiffs also filed a motion for partial summary judgment (Docket # 27) on the same day. The motions have been fully briefed and are ready for disposition. For the reasons that follow, the plaintiffs' motion for summary judgment is granted; the defendant's motion for summary judgment is granted in part and denied in part.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute

does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc.,Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

**FACTS**

Plaintiffs Meredith Benson and William Crafton are natural persons residing in Kenosha County, Wisconsin. (Plaintiffs' Proposed Findings of Facts ("PPFOF"), Docket # 28 at ¶¶ 1, 2.) Benson and Crafton were married in August of 2004. (Plaintiffs' Statement of Additional Facts, Docket # 32 at ¶ 1.) Meredith Benson is a consumer as defined by 15 U.S.C. § 1692a(3). (PPFOF at ¶ 3.) The defendant, the Law Firm of Jonathan B. Levine, is a debt collector as defined by 15 U.S.C. § 1692a(6). (PPFOF at ¶ 4.) The defendant sent a collection letter to Meredith Benson dated March 8, 2012 (PPFOF at ¶ 5) in an effort to collect a debt, as that term is defined in 15 U.S.C. § 1692a(5) (PPFOF at ¶ 6).

In relevant part, the letter from the defendant reads as follows:

> As a result of your unpaid condominium assessments, your ownership interest in your unit will be foreclosed upon shortly. That means that a foreclosure action will be begun in Wisconsin Circuit Court. This action, at its conclusion, may terminate your interest in the property.
>
> Because of the seriousness of this matter, you or your legal representative should contact me immediately if you are able to pay this debt.
>
> The balance through March 8, 2012 including attorney's fees, is $2,889.53. (An updated ledger is enclosed.)
>
> Legal fees are accrued at $250.00 for file start-up and then on an hourly basis, currently at $235.00 an hour. These are subject to change. In addition, you will owe the filing and service fees when litigation is begun.
>
> As you know, the assessment, and thus possibly interest and collection costs, increase each month.
>
> If you do not pay the balance due, the Assocation will be entitled to file a lawsuit against you for foreclosure.
>
> Federal law gives you 30 days after you receive this letter to dispute the validity of the debt or any part of it. If you do not dispute it within that period, I will assume it is valid. If you dispute it by notifying me to that effect, I will, as required by law, obtain and mail to you proof of the debt. And if within the same period you request the name and address of your original creditor, if the original creditor is different from the current creditor, I will furnish that information too.

(PPFOF at ¶ 7; *see also* Exh. A to the Complaint, Docket # 1-1.) Included with the letter was an account ledger. (PPFOF at ¶ 8; *see also* Exh. B to the Complaint, Docket # 1-2.) The defendant automatically includes a ledger in its collection communications with debtors (PPFOF at ¶ 12), which it reviews for usury and to ensure that the ledger pertains to the particular debtor's account (PPFOF at ¶ 13). The defendant does not undertake to warranty the accuracy of the ledgers it provides to debtors. (PPFOF at ¶ 14.)

The letter sent to Meredith Benson, including a ledger, indicated that the amount due was $2,899.53. (PPFOF at ¶ 8; *see also* Exh. B to the Complaint, Docket # 1-2.) The letter failed to include

-3-

language that indicated that consumers must invoke their rights under §§ 1692g(a)(4) and 1692g(a)(5) in writing. (PPFOF at ¶ 21.) The letter invited the consumer to dispute the debt. (Def. Response to PPFOF, Docket # 30 at p. 7, ¶ 21.) The account ledger included with the letter asserted that no payments (for homeowners' association fees) had been made between July 1, 2011 and March 1, 2012, and also showed a late fee for each of these months. (PPFOF at ¶ 9.) The ledger was not correct (PPFOF at ¶ 11), and payments had been made between April 2011 and February 2012 (PPFOF at ¶ 10). In response, Crafton replied to the letter and disputed the debt and requested validation. (PPFOF at ¶ 15.) Attorney Adam Bazelon then requested the information from his client. (PPFOF at ¶ 16.)

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The plaintiffs move for summary judgment on their claims under 15 U.S.C. §§ 1692g(a) and 1692e. Plaintiffs also argue that the defendant has not provided sufficient evidence for a reasonable jury to find in its favor on its *bona fide* error defense.

*1. Section 1692e Claims*

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." When determining whether a debt collector has violated Section 1692e, the question is analyzed from the perspective of the "unsophisticated consumer." As explained in *Lox v. CDA, Ltd.*, "[t]he unsophisticated consumer may be 'uninformed, naive, [and] trusting,' but is not a dimwit, has 'rudimentary knowledge of the financial world,' and 'is capable of making basic logical deductions and inferences.'" 689 F.3d 818, 822 (7th Cir. 2012) (internal citations omitted). Further, this Circuit "treat[s] the question of whether an unsophisticated consumer would find certain debt collection

-4-

language misleading as a question of fact." *Id.* (citing *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 503 (7th Cir. 1999)).

The Seventh Circuit has determined that, "as an outgrowth of this practice, . . . there are three categories of § 1692e cases." *Id.* (citing *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009)). In the first category are cases where the language is "plainly and clearly not misleading," in which extrinsic evidence is not needed to show that the language is not confusing. *Id.* (citing *Ruth*, 577 F.3d at 800). The second category of cases are those in which the "letters . . . are plainly deceptive and misleading," and thus "do not require any extrinsic evidence in order for the plaintiff to be successful." *Id.* (citing *Ruth*, 577 F.3d at 801). The third category of cases are the cases where "the debt collection language . . . is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated consumer." *Id.* (citing *Ruth*, 577 F.3d at 800). When cases fall into this category, the plaintiff must produce "extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.* (internal quotations omitted).

### 1.1  Section 1692e(2)(A)

Section 1692e(2)(A) prohibits "the false representation of the character, amount, or legal status of any debt." Particularly, the plaintiffs allege that the defendant falsely represented the character, amount, or legal status of their alleged debt, violating § 1692e(2)(A). The defendant argues, however, that the plaintiffs cannot show a violation of the FDCPA based solely on the inaccurate number. (Def. Br. in Opposition to Pl. Mtn. for Summary Judgment, Docket # 29 at 3.)

As stated above, the inquiry is conducted under the objective unsophisticated consumer standard, and "the state of mind of the reasonable debtor is *always* relevant." *Wahl v. Midland Credit*

-5-

*Management, Inc.*, 556 F.3d 634, 646 (7th Cir. 2009) (emphasis in original). Furthermore, "[a] statement cannot mislead unless it is material, so a false but nonmaterial statement is not actionable." *Hahn v. Triumph Partnerships*, 557 F.3d 755, 758 (7th Cir. 2009). A statement is material if "it has 'the ability to influence a *consumer's* decisions.'" *Lox*, 689 F.3d at 826 (quoting *O'Rourke v. Palisafes Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011) (emphasis in original)).

In this case, it is undisputed that the amount of the debt included in the letter, as reflected by the ledger attached by the defendant, was inaccurate. (Def. Resp. to PPFOF, Docket # 30 at ¶ 11.) Thus, the question is whether the inclusion of an inaccurate amount of debt in the collection letter would deceive or mislead an unsophisticated consumer. The plaintiffs argue that "[t]he only reasonable conclusion any consumer could draw from Defendant's communication is that Defendant claimed a legal right to collect $2,889.53, an amount that Defendant admits Plaintiffs did not owe." (Pl. Brief in Support of Mtn. for Summary Judgment, Docket # 27 at 8.) The defendant argues that because even an unsophisticated consumer should know her account history, she would not be misled by the letter at issue in the present case. (Docket # 29 at 4.) In short, the defendant contends that "[t]he unsophisticated consumer would not be misled that she actually owed the amount in the alleged notice." (*Id.*)

The plaintiffs cite *Lox v. CDA, Ltd.*, 689 F.3d 818, for support. In *Lox*, the Seventh Circuit found that a collection letter that stated the collector's "client may take legal steps against you" and that a court "could allow" for attorney fees violated § 1692e because the statement was false, material, and plainly misleading on its face. *Id.* at 822-26. The Seventh Circuit explained that an "unsophisticated consumer . . . could likely be shaken from a general belief that attorney fees cannot be assessed against a losing party if a debt collector implies that attorney fees are, in fact, a legitimate

-6-

possibility." *Id.* at 826. The plaintiffs argue that an unsophisticated consumer could also be "shaken" by a debt collector's inaccurate representation of a debt, even if the consumer knew she did not owe what the collector said that she did. (Docket # 27 at 9.)

The Court agrees. The statute explicitly prohibits the "false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). "Even an 'unintentional misrepresentation violates [15 U.S.C. § 1692e(2)(A)].'" *Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120, 1131 (W.D. Wis. 2004) (alteration in original) (citing *Patzka v. Viterbo College*, 917 F. Supp. 654, 658-59 (W.D. Wis. 1996)). Here, the inaccurate amount of the debt owed was material. And although the inclusion of the ledger was well-intended to assist the debtor, the inaccurate amount of debt could likely shake an unsophisticated consumer's belief in what she did owe. Even its presentation in a ledger format may falsely suggest or reinforce to an unsophisticated consumer the accuracy of the amount of debt. Consequently, it is likely to mislead an unsophisticated consumer, even one familiar with her account history. Accordingly, the plaintiffs' motion for summary judgment is granted as to their claim under § 1692e(2)(A).

### 1.2 Section 1692e(10)

Section 1692e(10) prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer." For the same reasons discussed above, the false representation that violated § 1692e(2)(A)—the amount of the debt owed—also violates § 1692e(10). Therefore, the Court grants summary judgment on the plaintiffs' claim under § 1692e(10).

*2.  Section 1692g(a) Claims*

Among the requirements placed on debt collectors by the FDCPA is a requirement that they include certain information in a collection letter. As relevant here, debt collectors must include:

> a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.
>
> a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. §§ 1692g(a)(4), (a)(5). Subsection (b) requires the debt collector "cease collection of the debt" if the debt collector is notified in writing that the debt, or any portion of the debt, is disputed or if the "consumer requests the name and address of the original creditor." 15 U.S.C. § 1692g(b).

In this case, there is no dispute that the collection letter failed to include the requisite "in writing" language. The defendant argues, however, that "the notice was otherwise clear that Ms. Benson had the right to dispute the validity of the claim." (Docket # 29 at 8.) Various courts, however, have held that the failure to include the "in writing" notice violates the FDCPA. *See, e.g.*, *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. 2003) (finding that by "omitting the words 'in writing,' [the defendant] did not effectively convey to the consumer his rights under" § 1692g(a)(4)); *Bicking v. Law Offices of Reubenstein and Cogan*, 783 F. Supp. 2d 841, 845 (E.D. Va. 2011) (same). As explained in *Camacho v. Bridgeport Financial Inc.*, "[t]he plain meaning of § 1692g is that . . . debtors can trigger the rights under subsections (a)(4) and (a)(5) only through written dispute." 430 F.3d 1078, 1081 (9th Cir. 2005). Making clear that the debtor is invited to dispute the debt is not enough to satisfy the requirements imposed on debt collectors under §§ 1692g(a)(4) and 1692g(a)(5).

-8-

The Court, therefore, grants the plaintiffs' motion for summary judgment on their claims under §§ 1692g(a)(4) and 1692g(a)(5).

### 3. *Bona Fide Error Defense*

The plaintiffs argue that the defendant has failed to present sufficient evidence in support of its *bona fide* error defense. (Docket # 27 at 26-27.) In order to avoid liability for violations of the FDCPA under the *bona fide* error defense, the defendant must prove by a preponderance of the evidence that (1) the violation was not intentional, resulting from a *bona fide* error and (2) that the violation occurred despite the "maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *see also Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995-96 (7th Cir. 2003). "Unless a party maintains reasonable procedures to avert a violation, the defense does not apply." *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1114 (7th Cir. 2008). In the present case, there were two distinct violations of the FDCPA: the false representation of the amount of the debt and the failure to include the "in writing" language as required by § 1692g(a). Therefore, the defendant's procedures must be "reasonably adapted to avoid" both kinds of errors.

Here, the plaintiffs do not contend that the defendant's violations were intentional. And the debt collector needs only to show that its error was unintentional, "not that its actions were unintentional." *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) (internal citations omitted). Additionally, the defendant correctly does not argue that the *bona fide* error defense saves it from the "in writing" omission. (*See* Docket # 29.) It may not. Failure to include the "in writing" requirement is an error of law, which precludes the use of the *bona fide* error defense. *See Jerman v. Carlisle, McNeillie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1624 (2010) ("We therefore hold that the *bona fide* error defense in § 1692k(c) does not apply to a violation of the FDCPA

-9-

resulting from a debt collector's incorrect interpretation of the requirements of the statute.") Thus, the remaining question is whether the defendant maintained procedures "reasonably adapted" to prevent misrepresenting the amount of the debt owed.

Indeed "the FDCPA does not require collectors to independently verify the validity of the debt to qualify for the '*bona fide* error' defense." *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004). However, in cases where the court found the debt collector's procedures to be "reasonably adapted," the defendants had other procedures. In *Hyman*, for example, the defendant had an agreement with the company for whom it collected debt to not send accounts that were in bankruptcy and promptly removed from the collection list any account later found to be in bankruptcy. *Id.* Likewise, in *Turner v. J.V.D.B. & Associates, Inc.*, which concerned an attempt to collect a debt that was discharged in bankruptcy, the Seventh Circuit suggested that the defendant may be able to assert the *bona fide* error defense to its violation of § 1692e by "show[ing] it had taken reasonably preventative measures to avoid such mistakes (such as an agreement with its creditor–clients that debts are current and the demand letter was sent soon after assignment)." 330 F.3d at 996.

In this case, the defendant cites to the deposition of Attorney Jonathan Levine, in which he discusses various procedures used by the firm. Among the procedures that Attorney Levine discussed was the implementation of a model letter recommended by the Seventh Circuit. (Levine Dep. Tr., Docket # 28-3, 30-1 at 76:14-18.) He also stated that the firm uses cards that help ensure calls from debtors are handled properly. (*Id.* at 76:19-24.) Attorney Levine also testified that the firm suspends and investigates even inarticulate protests (*id.* at 76:25-77:3) and includes a ledger with the original collection letter (*id.* at 77:4-9). He also stated that he requires "training, study of the law, access to the law, and attendance at seminars." (*Id.* at 77:10-13.)

-10-

Applying the above-cited cases here, the defendant has not offered any evidence of procedures that are "reasonably adapted" to prevent misrepresenting the amount of debt owed by a debtor. The Court should not, and does not, expect that the defendant would independently verify the validity of each debt referred to it for collection by a client. But, the defendant has not provided evidence of any other measure or procedure that is "reasonably adapted" to preventing this type of error or violation of the FDCPA. The defendant reviews the ledger it encloses with the initial collection letter for "patently egregious or apparently usurious charge[s]" and also to ensure it relates to the particular debtor. This is not enough. The error here was an inaccurate debt amount. The defendant has produced no evidence that it has any agreement with its clients regarding the currency or accuracy of the accounts when they are referred. Therefore, even construing the evidence in the light most favorable to the defendant, as the Court must, the defendant has not produced sufficient evidence which would support a reasonably jury finding that the *bona fide* error defense applied to its violations of §§ 1692e(2)(A) and 1692e(10).

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In its motion for summary judgment, the defendant argues that William Crafton must be dismissed as a plaintiff because the collection activity was not addressed to him and that the plaintiffs have failed to establish a claim for actual damages.

*1.   William Crafton*

The defendant argues that Crafton must be dismissed as a party because the collection letter was not addressed to him and because the collection efforts were not directed at him. (Defendant's Br. in Support of Mtn. for Summary Judgment, Docket # 23 at 6.) In other words, the defendant argues that Crafton does not have standing to bring claims under the FDCPA. The plaintiffs counter that Crafton is a consumer under the FDCPA and therefore does have standing. Alternatively, the

-11-

plaintiffs argue that even if Crafton is not a consumer, he need not be a consumer to maintain a claim under §1692(e)(10).

Under the FDCPA, "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . ." 15 U.S.C. § 1692k(a). Various district courts have interpreted this section, and its effect on standing, differently.

For example, in *Dewey v. Associated Collectors, Inc.*, 927 F.Supp. 1172, 1174 (W.D. Wis. 1996), which the defendant cites for support, the debtor's wife also sued under the FDCPA. The letters had been addressed to her husband, and the plaintiffs offered no evidence that the wife had read or experienced the abusive practices complained of. *Id.* The court then stated, "Even if she had reviewed [the letter], the [FDCPA] does not permit her to recover for violations in a letter addressed to someone else in this instance," *id.*, noting that she was not the object of the collection efforts, *id.* at 1175.

By contrast, in *Flowers v. Accelerated Bureau of Collections, Inc.*, No. 96 C 4003, 1997 WL 136313, * 7 (N.D. Ill. Mar. 19, 1997), the court explained that "[m]any courts have held that 'person' includes non-debtors who have nonetheless been harmed by an improper debt collection practice." *Id.* (collecting cases). The *Flowers* court found that the debt collectors were liable to the debtor's wife where the wife was jointly responsible for the debt and was also the object of collection efforts, distinguishing the *Dewey* case. *Id.* at * 7-8 ("The *Dewey* case is distinguishable in that the collector there sent his threats through the mail. Whereas the *Dewey* collector would have no reason to suspect that debtor's wife had read his mail, [the collector in this case] likely knew that [the wife] was on the receiving end of its threats.").

-12-

Additionally, in *Swearingen v. Portfolio Recovery Associates, LLC*, the court focused on the statutory language, explaining that "[b]y its plain language . . . the FDCPA provides relief for debtors as well as non-debtors, provided no limitation of scope is stated within the specific provision on which the plaintiffs' allegations are placed." 892 F. Supp. 2d 987, 991 (N.D. Ill. 2012) (collecting cases).

The Court finds the *Swearingen* approach most persuasive. Applying this approach to the present case, the plain language of 15 U.S.C. § 1692e is not limited in scope to debtors; rather, it prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Therefore, a non-debtor has standing to bring a claim under § 1692e. Additionally, unlike in *Dewey*, there is ample evidence that Crafton read the collection letter, which shows that Crafton was, in fact, subject to the false representation and the violations of § 1692e. Particularly, it was Crafton who wrote a letter back to the defendant, not his wife. Because there is no limitation of scope within this provision, and because there is ample evidence Crafton was subject to the violation, Crafton has standing to bring the claims under § 1692e.

Unlike § 1692e, the plain language of 15 U.S.C. § 1692g(a) appears to be limited in scope. The requirements placed on debt collectors are to the "consumer." Under 15 U.S.C. § 1692a(3), "consumer" is defined as "any natural person obligated or allegedly obligated to pay a debt." But, as the plaintiffs note, Wisconsin is a marital property state, making Crafton liable for any debt incurred "in the interest of the marriage." Wis. Stat. § 766.55. The alleged debt at issue in this case was incurred after the couple married, and given that "[a]n obligation incurred by a spouse during marriage, including one attributable to an act or omission during marriage, is presumed to be incurred in the interest of the marriage," Wis. Stat. § 766.55(1), Crafton was obligated to pay the debt. It is

-13-

undisputed that Benson, not Crafton, owns the condo, but this does not rid Crafton of his obligation to pay the debt. The defendant argues, however, that because Crafton is not the titled owner of the condo, he has no duty to pay the condo assessments under Wis. Stat. § 703.165(2) and therefore has no standing to bring a claim. Even assuming that Crafton is not liable for the assessments, the debt also included other charges, including "Legal fees regarding deck" and "Charge for special Order materials for t." (Exh. B to the Complaint, Docket # 1-2.) Crafton, therefore, has claims under § 1692g(a).

Because Crafton has standing to bring suit under both § 1692e and § 1692g, the defendant's motion for summary judgment on the issue of Crafton's standing is denied.

    *2.    Actual Damages*

The defendant asserts two arguments relating to damages. First, the defendant argues that it made an offer of judgment pursuant to Fed. R. Civ. P. 68 and because that offer "represents the most that plaintiffs could potentially recover," the case is moot and must be dismissed. Second, the defendant argues that the plaintiffs have failed to establish actual damages (Docket # 23 at 7-10); particularly, the defendant argues that the plaintiffs have not established actual damages "linked to the omission of the words 'in writing'" (*id.* at 9).

As a preliminary matter, the defendant's argument that the offer of judgment moots the plaintiffs' case is without merit. Under Seventh Circuit precedent, an offer of judgment that satisfies a plaintiff's entire demand moots the plaintiff's case. *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991). However, the offer of judgment did not encompass Crafton's damages. Even without actual damages, each plaintiff is entitled to statutory damages. Because each individual may recover up to $1,000 in statutory damages (or up to $2,000 total), the offer of judgment, which was for $1,000, did not satisfy the entire demand. *See Gaspardo v. Lighthouse Recovery Associates LLC*, No. 12-C-823, 2013

-14-

WL 1966931, * 2 (E.D. Wis. May 9, 2013) (awarding $1,000 in statutory damages to each individual plaintiff, for a total statutory damages award of $2,000). Thus, plaintiffs' case is not moot.

Next, under the FDCPA, in addition to statutory damages, plaintiffs are also entitled to costs and attorney's fees and can recover actual damages. 15 U.S.C. § 1692k(a); *see also Veach v. Sheeks*, 316 F.3d 690, 692 (7th Cir. 2003) (explaining that § 1692k allows a plaintiff "to recover actual damages, a penalty of up to $1,000, and attorney's fees . . . ."). Actual damages are recoverable "only [for] losses flowing from an FDCPA violation." *Thomas v. Law Firm of Simpson & Cybak*, 244 Fed. Appx. 741, 743 (7th Cir. 2007). Thus, there must be a causal connection between the violation and the damages alleged.

The plaintiffs state their claims for actual damages—for emotional distress and an attendant invasion of privacy[1]—arise from the defendant's violations of § 1692e; they admit that the claim for actual damages does not stem from their claims under § 1692g(a). (Pl. Brief in Opposition to Def.'s Mot. for Summary Judgment, Docket # 31 at 11.) Therefore, the only question is whether the plaintiffs have alleged enough facts, taken in their favor, such that a reasonable jury could find they suffered actual damages as a result of the defendant's violations of § 1692e.

As to Crafton, the only allegation of emotional damages is that he suffered insomnia. (Benson Dep. at 72:10-11.) The only evidence of the insomnia comes from Benson's deposition. (Excerpts of the Deposition of Meredith Benson, Docket # 32-1, 34-1 ("Benson Dep.").) Crafton himself was never deposed. When asked how long Crafton has suffered from insomnia, Benson answered that she did not know. (*Id.* at 72: 14-16, 72:20.) Benson also testified that she did not know how Crafton felt

---

[1] The Court only discusses the plaintiffs' claims for damages for emotional distress as the plaintiffs have not provided evidence or developed arguments in support of their claim for damages based on an invasion of privacy. (*See* Plaintiffs' Br. Opposing Defendant's Mtn. for Summary Judgment, Docket # 31 at 6-11.)

-15-

about the circumstances surrounding the case. (*Id.* at 71:14.) This bare allegation from Benson regarding Crafton's insomnia is not enough to sustain an allegation that he suffered emotional distress. Even if Crafton's allegation of insomnia is accepted, there is no evidence of any causal connection between the insomnia and the defendant's §1692(e) violation. Therefore, Crafton has not provided sufficient evidence such that a reasonable jury could find he suffered actual damages.

In regards to Benson, there is similarly not enough evidence, even when taken in the light most favorable to her, that she has suffered actual damages that were caused by the defendant's violations of § 1692e. The evidence of her emotional distress is insufficient. When asked what about the letter caused her stress, Benson indicated it was the inclusion of language stating that the defendants would begin foreclosure proceedings (*id.* at 60:3-6) and because the letter said she owed money (*id.* at 60:24-25). She reiterated that the money and the language caused her stress. (*Id.* at 68:1-3, 5, 7-8, 16, 22-24.) She also said that she "freaked out" because she feared they "were going to be homeless." (*Id.* at 69:9-10.) Benson said that she did not recall whether she sought new or different dosages of medicine as a result of receiving the letter (*id.* at 65:23-25), and provided no prescription records (*id.* at 66:6). Benson also stated that she began experiencing incontinence around the time she and Crafton received the letter, though she did not seek treatment for eight or nine months. (*Id.* at 68:19-23.)

It is true that Benson need not prove emotional distress with expert testimony or documentary evidence. Nonetheless, when a party seeks emotional damages, she "must provide the court with a reasonably detailed explanation of the injuries suffered." *Suzka v. Capital Collections, LLC*, No. 08-CV-929, 2009 WL 959798, * 2 (E.D. Wis. Apr. 8, 2009) (citing *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003)). Conclusory statements that receiving the letter caused her stress (or "freaked" her out)

-16-

do not constitute a "detailed explanation" of her injuries. Here, Benson has not provided sufficient evidence such that a reasonable jury could find actual damages in her favor.

Even if Benson alleged sufficient evidence to show actual damages, she has not established a causal connection between the violation of § 1692e and her alleged actual damages. For example, during her deposition, in discussing her incontinence, Benson stated, "I am not saying the letter caused [the incontinence]. I'm just saying it was one more—one more thing piled on." (*Id.* at 67:22-23.) When asked what other things were "piling on" at the time, Benson responded that work was stressful, as was her life at home. (*Id.* at 68:1-3, 5, 7-8.) The actual damages must arise from the false representation of the amount of debt—not from the mere fact of receiving the letter. While it is a perfectly understandable reaction to experience stress after receiving a collection letter, it is not enough to recover actual damages for a violation of § 1692e(2)(A) and/or § 1692e(10). Importantly, the plaintiffs do not contend that they did not owe any money on the account, just that they owed less than what was stated. (*See* Pl. Br. in Support of Mtn. for Summary Judgment, Docket # 27 at 7.) This is not a case where the debt collector attempted to collect an entirely non-existent debt. Benson must show that a rational jury could be able to find that her emotional damages were caused by the letter's inaccurate statement of the amount of debt. She has failed to do so.

In sum, Benson's deposition testimony does not, even when taken in the light most favorable to her, provide a basis for actual damages for the violations of § 1692e. Though Benson said the letter caused her stress, she also points to no particular evidence, instances, or circumstances that support emotional distress, nor does she connect her damages to the inaccurate statement of the amount of the debt in the letter. Therefore, Benson is also not entitled to actual damages on her claims under § 1692e.

-17-

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiffs' motion for partial summary judgment (Docket # 27) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (Docket # 22) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS ALSO ORDERED** that the parties are to confer and make a joint submission on the remaining issues in this case, statutory damages and attorney's fees, by **July 19, 2013**. If the parties are unable to reach an agreement, each party shall make a separate submission on statutory damages and attorney's fees by **July 26, 2013**.

Dated at Milwaukee, Wisconsin this 9th day of July, 2013.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge