# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**WILLIAM CRAFTON AND MEREDITH BENSON ,**

    **Plaintiffs,**

    **v.**                                                        **Case No. 12-CV-602**

**LAW FIRM OF JONATHAN B. LEVINE,**

    **Defendant.**

## DECISION AND ORDER ON PLAINTIFFS' MOTION
## FOR ATTORNEYS' FEES AND COSTS

In this Fair Debt Collection Practices Act ("FDCPA") action, the plaintiffs, William Crafton and Meredith Benson ("plaintiffs"), have accepted defendant, Law Firm of Jonathan B. Levine's ("defendant"), offer of judgment in the amount of $2,000.00, plus reasonable attorneys' fees and costs as determined by the Court. Before the Court is the plaintiffs' motion for an award of attorneys' fees in the amount of $25,500.00 and costs in the amount of $1,103.33. For the reasons stated in this decision, the motion is granted in part and denied in part.

    *1.*     *Legal Standard*

Under the FDCPA, a debt collector is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3); *see Tolentino v. Friedman*, 46 F.3d 645, 651-52 (7th Cir. 1995). The general rule for calculating attorneys' fee awards under fee shifting statutes is applicable to attorneys' fees awards under the FDCPA. *Gastineau v. Wright*, 592 F.3d 747, 748-49 (7th Cir. 2010). The starting point for determining reasonable attorneys' fees is the lodestar method, which is calculated by multiplying the number of hours

reasonably expended by the reasonable hourly rate. *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 639 (7th Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). There is a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (internal quotation marks omitted); *Pickett*, 664 F.3d at 639. However, once the lodestar is determined, the court may adjust the fee upward or downward based on a variety of factors, the most important of which is the degree of success obtained. *Hensley*, 461 U.S. at 430, n.3, 436. The other factors to be considered as delineated by the Supreme Court are:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the plaintiff's attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Tolentino*, 45 F.3d at 652 (citing *Hensley*, 461 U.S. at 441). In sum, "[t]he standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999). The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Id*. (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth "a good reason why a lower rate is essential." *Id*. (internal quotation and citations omitted).

2. *Application to this Case*

    2.1   Hourly Rate

The plaintiffs are requesting an hourly rate of $335 for Attorneys Marshall Meyers and Aaron Radbil; an hourly rate of $175 for Attorneys Joe Panvini, Jose Gill, and Venus Booth; and an hourly rate of $175 for law clerk Eric Awerbuch. (Declaration of Marshall Meyers ("Meyers Decl.") ¶ 8-9, Docket # 47-13.) In support of the reasonableness of the hourly rate, the plaintiffs cite to several cases from this district, as well as cases from across the country, that upheld hourly rates of $300 or greater in consumer protection cases. (Docket # 47 at 8-9.) In addition, the plaintiffs cite to recent cases from the District of Arizona, the District of Colorado, and the Southern District of Florida upholding the hourly rates of various members of the Weisberg & Meyers, LLC law firm. (*Id.* at 10-11.) Further, the plaintiffs have provided the United States Consumer Law Attorney Fee Survey for 2010-2011 ("Fee Survey") and argue that, after excising billing discretion, had an average billing rate of $179.10, which is below the medium rate of $300 and average rate of $276. (*Id.* at 12.) Finally, the plaintiffs argue their hourly rates are in line with the Laffey Matrix. (*Id.* at 12-13.)

The defendants argue that the plaintiffs' hourly rate is excessive. The defendants rely principally on an article from the State Bar of Wisconsin's publication *Wisconsin Lawyer*, that states that the average hourly rate for private practitioners in Wisconsin is $229 per hour. (Ex. E, Docket # 48-5 at 3.) This publication is of limited value. Although it focuses on Wisconsin, unlike the Fee Survey which includes billing rates for Chicago and other larger metropolitan areas in its Midwest average, it fails to break down the rate for attorneys practicing in consumer protection law. Further, even using this article, it states the average billing rate for associates in private practice with 1 to 4

years of experience in 2012 was $182, which is more than the $175 requested for Weisberg & Meyers' associates, who each have between 1 to 4 years of experience. (Ex. E at 6.)

Several courts in this District have recognized the Fee Survey as a reliable resource in determining the reasonableness of an attorney's hourly rate, particularly in conjunction with consideration of counsel's experience. *See Moreland v. Dorsey Thornton & Assocs., LLC*, No. 10-CV-867, 2011 WL 1980282, *3 (E.D. Wis. May 20, 2011) (relying on counsel's website, which lists the attorney profiles, along with the United States Consumer Law Attorney Fee Survey in determining that the requested hourly rate was reasonable); *House v. Shapiro & Price*, No. 10-CV-842, 2011 WL 1219247 (E.D. Wis. Mar. 30, 2011) (same); *Suleski v. Bryant Lafayette & Assocs.*, No. 09-CV-960, 2010 WL 1904968 (E.D. Wis. May 10, 2010) (same).

According to the Fee Survey, the average attorney hourly rate in 2010-2011 for consumer attorneys in the Midwest with 11 to 15 years of experience was $430.00. (Ex. O, Docket # 47-16 at 27.) The average for consumer attorneys in the Midwest with one to three years experience was $287. (*Id.*) Attorney Meyers avers that he has been practicing consumer law exclusively for over 10 years; Attorney Radbil has been practicing for approximately seven years; and Associate Attorneys Gill, Panvini, and Booth have each been practicing between 1 to 3 years. (Marshall Decl. ¶¶ 8-9, Ex. M.) Thus, Attorney Meyers' hourly rate, as well as the rate for the Associate Attorneys, fall well below the average for attorneys according to Fee Survey and are reasonable. Finally, it is unclear why the firm's law clerk is billed at the same rate as an Associate Attorney. I will reduce his rate to $135, which is the firm's rate for a paralegal.

### 2.2 Hours Billed

As to hours expended, plaintiffs claim that ten attorneys expended 139.6 hours and its paralegals, law clerks, and legal support staff expended 25.7 hours performing legal services reasonably necessary to litigate their claims. Plaintiffs claim that they incurred a total of $29,407.00 in fees and, after exercising billing discretion, they seek $24,500.00 in attorneys' fees (plus an additional $1,000.00 in fees for filing this fee motion). Defendant argues that these hours should be reduced for time billed for unsuccessful claims; time billed for tasks that are administrative, clerical, or secretarial; and time billed for unnecessary, excessive, and duplicative work. I will address each in turn.

In this case, plaintiffs sought both statutory and actual damages. But on summary judgment, plaintiffs lost their claim for actual damages. Accordingly, defendant argues, that plaintiffs are not entitled to receive attorneys' fees and costs related to their actual damage claim. It is true that a plaintiff should not be compensated for work performed on unsuccessful claims that are not legally or factually related to the prevailing claim. *Spellan v. Bd of Educ. for Dist*. 111, 59 F.3d 642, 645-46 (7th Cir. 1995). However, time spent on unsuccessful, related claims may be compensated. *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir. 1983); *see also Cortez v. Trans Union Corp.*, No. 94 C 7705, 1997 WL 7568 (N.D. Ill. Jan. 3, 1997) (finding that time spent on related but unsuccessful claims is not automatically excluded in determining the fee award in FDCPA case). The starting point for separating an unrelated, unsuccessful claim from a related, unsuccessful claim is to determine whether a particular unsuccessful claim shares a common core of facts with the successful claim or is based on a related legal theory. *Mary Beth G.*, 723 F.2d at 1279. "Under this analysis, an unsuccessful claim will be unrelated to a successful claim when the relief sought on the successful

claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *Id.* Applying these principles here, I will not disallow fees and costs for work performed on the actual damages claim. Although plaintiffs were unsuccessful on the actual damages claim, the claims were based on the same common core facts and related legal theory as the successful claims. However, as will be discussed later, the final award may be adjusted to reflect the level of success.

Defendant also objects to compensating for work performed on plaintiffs' motion to disqualify Attorney Bazelon because it was unnecessarily over-litigating the case. Although I did not decide this motion on the merits, I do not find that the plaintiffs' position was unreasonable or without foundation and thus will not disallow fees for work performed on this motion. *See Christiansburg Garmet Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

Next, defendant argues that the plaintiffs are not entitled to fees for clerical, administrative, or secretarial tasks. Plaintiffs respond that they have already subtracted the time incurred for clerical, administrative, secretarial, excessive, unnecessary, and duplicative tasks, as well as for attorneys and staff who played only a small role in this litigation. The plaintiffs itemize the specific hours deducted for specific attorneys, paralegals, and the legal support staff, which amounts to 4.7 hours and translates to $695. (Pl.'s Reply Br. at 4, Docket # 49). Although the plaintiffs state that they deducted $4,212.00 in fees for duplicative and/or administrative tasks, it is unclear which entries of the billing ledger were actually deducted, making it impossible to review. It is unnecessary to address this further, however, because considering the billing ledger as a whole, it is clear the plaintiffs overstaffed the case, which led to duplicative and unnecessary work and will be reduced on this basis.

This case was neither novel nor complex. It involved a single letter sent to the plaintiffs that gave rise to the following issues: whether the defendant violated 15 U.S.C. § 1692e(2)(A) and e(10) by presenting an inaccurate number on the ledger; whether the defendant violated § 1692g(a) by failing to include the language "in writing" in its collection letter; whether the defendants met the *bona fide* error defense; whether Crafton had standing to sue; and finally, whether the plaintiffs established actual damages. The law firm representing the plaintiffs in the present action, Weisberg & Meyers, frequently appears on behalf of plaintiffs in FDCPA actions across the country.[1] With this wealth of experience, it was unnecessary to involve ten attorneys and ten paralegals on this straightforward FDCPA case. It begs the question of whether the firm would have presented a bill to a paying client for the services of ten attorneys and ten paralegals. As the Supreme Court has stated, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (emphasis in original) (internal quotation and citation omitted). FDCPA cases such as this one:

> [S]hould take little time, be resolved largely through forms and existing boilerplate, and require very little experience. In the rare instance that an FDCPA case would proceed all the way through trial, the entire litigation process, including trial, would likely be uncomplicated and straightforward, akin to a traffic citation or a criminal misdemeanor.

*Pappenfuss v. Receivable Management Services Corp.*, No. 13-CV-175, 2013 WL 5427891, *4 (E.D. Wis. Septe. 26, 2013). The ledger indicates Associate Attorney Jose Gill and Managing Partner Marshall Meyers were the principal attorneys on this file. One partner and one associate assigned to this file was more than sufficient. Thus, I will deduct the hours of Attorneys Radbil, Booth, and Panvini whose work seems peripheral, duplicative, and unnecessary.

---

[1] In fact, a quick search of "Weisberg & Meyers" and "FDCPA" reveals 154 cases on Westlaw.

Further, the bulk of the attorneys' fees claimed, 96.2 hours, are from Attorney Gill.[2] A review of Attorney Gill's bills indicates either overbilling or inefficiency. For example, Attorney Gill bills one hour for creating short exhibits that should involve either printing or copying easily accessible documents. (Mar. 15, 2013, Docket # 47-12 at 11.) Attorney Gill bills 1.2 hours for reviewing the local rules and creating a proposed order for a motion to extend discovery that is one sentence long. (Mar. 15, 2013, Docket # 47-12 at 11; Proposed Order, Docket # 13-4.)

Attorney Gill billed 52.5 hours in total related to the plaintiffs' summary judgment motion and responding to the defendant's summary judgment motion. Once again, these issues are not novel or complex. According to his biography, Attorney Gill focuses his practice exclusively on consumer protection law. (Declaration of Marshall Meyers ("Meyers Decl.") ¶ 7, Ex. M, Docket # 47-14.) Thus, it is unclear to me why Attorney Gill needed to spend 7.4 hours researching Section 1692e and the *bona fide* error defense, issues that come up frequently in FDCPA litigation. As another example, the only case the defendants cite in support of their standing argument is *Dewey v. Associated Collections, Inc.*, 927 F. Supp. 1172, 1174-75 (W.D. Wis. 1996), a case that addresses the issue in one paragraph. Attorney Gill spent 8.1 hours addressing and distinguishing the defendant's citation to *Dewey v. Associated Collections, Inc.*, 927 F. Supp. 1172 (W.D. Wis. 1996), which translated to a little over one page in the plaintiffs' response brief. (Docket # 47-12 at 6; Docket # 31 at 5-6.)

Also, because this firm focuses on consumer protection law, there should be a wealth of existing briefs and research from which to pull law on these common FDCPA issues. However, Attorney Gill spent 2.6 hours researching and writing the "in writing" section of the summary

---

[2] Although plaintiffs state that Attorney Gill billed a total of 96.2 hours, when adding his entries on Exhibit K, the total equals 94.7.

judgment brief when the very case he cites in support, *Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859 (S.D. Tex. 2011), was a case litigated by the Weisberg & Meyers law firm. Further, the majority of the cases cited in the string cite in the footnote in plaintiffs' brief appear in a brief the Weisberg & Meyers law firm filed in the *Osborn* case. (*Compare* Docket # 27 at 6 *with* Docket # 23 at 17 in *Osborn v. Ekpsz*, No. 10-cv-2252 (S.D. Tex.)).

The bills further reveal inefficiency in that Attorney Gill frequently spent an excessive amount of hours revising briefs as compared to the person reviewing the brief. For example, Attorney Radbil spent 0.7 hours reviewing plaintiffs' reply brief to the motion to disqualify Attorney Bazelon, but Attorney Gill spent 3.5 hours revising the brief itself. (Docket 47-12 at 8-9.) Attorney Radbil spent 0.5 hours reviewing Attorney Gill's summary judgment draft and Attorney Gill spent 5.5 hours revising the brief.

After thoroughly reviewing the records, I am persuaded that the amount of hours spent litigating this case were unreasonable. Thus, in addition to deducting the hours of Attorneys Radbil, Booth, and Panvini, the Court will also reduce Attorney's Gills hours by fifty percent to 47.35 hours. As shown in the chart below, the Court finds the lodestar in this case to be $17,197.75.

| Individual | Reasonable Hourly Rate | Reasonable Hours[3] | Total Fee |
| --- | --- | --- | --- |
| Marshall Meyers | $335 | 18.3 | $6,130.50 |
| Jose Gill | $175 | 47.35 | $8,286.25 |
| Paralegals | $135 | 16.2 | $2,187.00 |
| Law Clerk | $135 | 4.4 | $594.00 |
| **TOTAL** | | 86.25 | $17,197.75 |

---

[3] It should be noted that when adding the entries for Eric Awerbuch in Exhibit K, the amount is 4.4 hours, not 5 hours as stated by plaintiffs in their brief. Further, the amount for paralegal Bruner was similarly lower than stated in plaintiffs' brief (.8 hours). These numbers have been adjusted accordingly.

### 2.3 Adjustment of the Lodestar

Having concluded that the lodestar in this action is $17,197.75 based upon a total of 86.25 hours, the Court must now consider whether this amount should be adjusted based upon "various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher v. Law Office of Phillip J. Rotche & Associates, P.C.*, 574 F.3d 852, 856–57 (7th Cir. 2009). Once again, the legal issues involved were not complex. But that lack of complexity was accounted for in the Court's determination of the reasonable hours expended and therefore no further reduction here is appropriate.

Regarding degree of success, the plaintiffs recovered $2,000.00, the maximum statutory damages they can receive under the law. *See* 15 U.S.C. § 1692k(a). However, the plaintiffs also sought actual damages in their complaint, and were unsuccessful in recovering these damages. Because degree of success is the "most critical factor" in determining the overall reasonableness of a fee award, *see Farrar v. Hobby*, 506 U.S. 103, 114 (1992), I will slightly reduce the lodestar to account for the failure to obtain actual damages. *But see Tolentino*, 46 F.3d at 652-53 (in case where plaintiff suffered no actual damages and sought only statutory damages, recovery of maximum statutory damages allowed constituted high degree of success under *Farrar*); *but see also Aslam v. Malen & Associates, P.C.*, 669 F. Supp. 2d 275, 279 (E.D.N.Y. 2009) (in case where plaintiff's complaint sought both statutory and actual damages, the court found that "[h]aving obtained both forms of relief sought in the complaint, including the maximum amount of statutory damages permissible under the FDCPA, . . . the Plaintiff achieved a high degree of success and therefore [the court] will not reduce counsel's fee award").

Finally, regarding advancement of the public interest, Judge Goodstein's recent statement in *Pappenfuss* is equally applicable to this case:

> [T]his was not a case that, in the micro scale, advanced any particular strong public interest. But on the macro scale, lawsuits by private individuals are the primary means by which Congress' effort to protect debtors from the deceptive and harassing tactics condemned by the FDCPA.

2013 WL 5427891 at *7. Thus, the Court will not adjust the lodestar based on advancement of the public interest. In sum, considering all relevant factors, the lodestar will be adjusted to award the plaintiffs $15,000.00 in attorneys' fees.

*3. Conclusion*

For the reasons stated above, the Court finds the plaintiffs are entitled to $15,000.00 in fees. In addition, the defendant does not object to the $1,000.00 requested for the fee motion or the $1,103.33 in costs. Therefore, in accordance with 15 U.S.C. § 1692k(a)(3), 28 U.S.C. § 1920(1), Fed. R. Civ. P. 54(d)(2), and Civil L.R. 54, the defendant shall pay to the plaintiffs the amount of $17,103.33 in costs and attorneys' fees.

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiffs' motion for attorneys' fees and costs (Docket # 47) is granted in part and denied in part. The plaintiffs are granted $17,103.33 in costs and attorneys' fees.

Dated at Milwaukee, Wisconsin this 7th day of March, 2014.

                                      BY THE COURT

                                      *s/Nancy Joseph*
                                      NANCY JOSEPH
                                      United States Magistrate Judge